May it please the Court, Roland Bayh, BYE, preparing for the defendants and appellants in this case. There are two principal issues in this appeal to reason trial here. The first is that there was never a voluntary knowing waiver by the defendants of the right to a jury trial under the Seventh Amendment. And plaintiff in the respondent's brief doesn't even argue that there was a voluntary or knowing waiver. Plaintiff's claim in Judge Wright's statement of decision below finds that the defendants were deemed to have waived their constitutional right. Well, the defendants' lawyers sign the agreement that waives, and there's no – I mean, I don't see why – see any persuasive reason why we should require voluntary knowing waiver of jury trial. I mean, you can do it by not filing an answer with a demand at the right time. There are all sorts of ways you can waive jury trial. And, you know, other courts have said you don't need to. I don't understand why we should hold it, go out of our way to hold it. Your Honor, there's nothing in this case that would result in a waiver of a jury trial. Well, the lawyers signed it. I understand that the lawyers signed the agreement. That's what lawyers are for, aren't they? I mean, they're your – they're the client's agent. Put Mr. Koch aside. The lawyer is your client's agent. By the way, you represent all of the defendants? Yes, I do. Is it, in fact, correct that the defendants don't contest the fact that Mr. Koch was acting for all of them? He was not acting. Well, how can you represent all of them and take that position? I can represent all of them, even if they have to huddle and make decisions among themselves. Don't they have conflicting interests? They do not have conflicting interests. Their – the potential conflicts of interest were resolved a long time ago in writing, and those issues have been disposed of. It's not before us. Well, doesn't – oh, sorry. Go ahead. I'm sorry. I just want to – I could see a possibility where we – I could conclude that sanctions should be awarded and upheld against Koch because he refused to obey the district court's orders twice and didn't appear for his deposition, but that they shouldn't be upheld against the other defendants because they actually didn't fail to comply with any court orders. The statement that he twice failed to obey a court order is not correct. Well, you're not answering my question. Oh, I'm sorry. He's the one who did the conduct that incurred the sanctions. He is the one who did disobey a court order. But the sanctions went against everybody. Against everybody, that's right. Are you making an argument at all that if we uphold them against Koch, we shouldn't uphold them against the others? I understand your question, yes. But to sanction the others for the conduct of Mr. Koch is a denial of due process because they've been denied their right to try this case on its merits. That might be true as to Ms. – is it Patricia Manolis? Do I have that correct? Manolis, that's correct. It may be true as to her, but how can that possibly be true as to Victoria Koch and the company that they own? The company is owned by Victoria Koch solely. She's the only officer. Is there any doubt that Mr. Koch was acting on behalf of the company? Yes, there's doubt. He was not authorized to make decisions on behalf of the company. It's her company, and she does make the decisions for it. Well, when he was engaged in the games that were being played up in New Hampshire, was he acting solely for himself, or did he have any capacity whatsoever, or was he representing anybody else? He was not representing anybody. It was his deposition. And there had been an agreement for it to take place in one city in New Hampshire. Mr. Burns said, no, I want to move the place. Mr. Koch didn't have an attorney who could appear at that place. There were no games being played. Mr. Burns pulled the plug on the deposition and never went to New Hampshire because of the disagreement over the city. Well, that's not what the judge concluded, obviously. Judge Nakazato, Magistrate Judge Nakazato did then order Mr. Koch to come to California. And initially, he was not able to do it on the particular day that was specified. He offered to come on other days. Well, what is our standard of review with respect to the sanctions? With respect to the sanctions? Because of the fact that the sanctions, first, it depends on which sanctions we're talking about. Judge Nakazato's sanction orders were overturned by Judge Karnoff. That disposed of those orders. We were done with them. Mr. Koch came to California. He gave his deposition.  On the first day of trial, Judge Wright reinstated Judge Nakazato's sanctions. Right. And that's where we are today. Isn't that correct? As to that problem, there was no hearing. There were no findings by Judge Wright. And as a consequence, the standard on appeal is de novo because there are no findings. In addition, those sanction orders are what Judge Wright then used to bootstrap the argument that there's no right to a jury trial because under the sanctions, the defendants, the rest of the defendants, are deemed to have authorized Mr. Koch to act on the behalf of everybody, deemed to have. Mr. Koch is deemed to have authorized Mr. Cussell to sign the agreement, even though none of the defendants signed it. And because of that, then, the jury waiver from the agreement was used by Judge Wright. So it all stems from the sanctions. And because the sanctions affect the constitutional right of the parties, that is the right to a jury trial, that's a de novo review. Would you go retreat back to my question of why, putting Koch aside, the lawyer's signature on that agreement isn't sufficient to bind all of his clients? And if I understand it correctly, there's no question at all that he was representing all four parties. That's true. He was representing everybody. So he signs the agreement. Why isn't the squawk with him if it wasn't authorized conduct? Because he certainly had ostensible agency. There's nothing more. Because if we look at the contract, there is a purpose for Mr. Cussell to sign and there's a purpose for the defendants to sign. And there are separate signature blocks. I understand. And the testimony of Mr. Cussell was, I signed solely to create this confidential privilege communication with Mr. Nicholas, and I also reviewed it to make sure I wasn't going to have to pay the fees. But his testimony and the testimony of Mr. Nicholas was, the individual defendants still had to sign. And I do want to address that. Well, what are you going to do? What's going to happen at a new trial? I mean, something just doesn't – I mean, I have to confess, it doesn't make a ton of sense to me. I mean, obviously, you want to go back to trial and you want to trial a jury trial. Most everything's been – I mean, you've got a frozen record. What's going to happen? This case has never been a abusive contract case because the contract was never agreed to by the defense. Well, I understand. Whatever testimony is out there is out there. You're not going to be able to all surround it. So you're just going to get, what, another – waste another day or two to come out with the same result? No, Your Honor. So the – Judge Wright did not address the Quata Marawood claim. And that's what this case really is, is Quata Marawood. There's nothing in his statement of decision about Quata Marawood. He ruled solely on the contract cause of action. What will happen at re-trial is that the parties will have a Quata Marawood trial where Mr. Nicholas will say, the value of my services is $122,000, and the defense will say the value of your services was nothing. But wait a second. But why? Why? I mean, isn't it pretty clear that there is a contract and that's what he was entitled to under the contract? No. No, in fact, even Mr. Nicholas said that there was no contract. And I'm looking at the excerpts of the record, page 218. Mr. Nicholas was asked to look at Exhibit 1, which is his proposed engagement letter. Page 4 is the signature block where the defense did not sign. Question, Mr. Nicholas, looking at Exhibit 1-4, answer, yes, sir. Question, were you expecting the four defendants to sign that document? Answer, yes. I know the signature is not the key thing. The signature is not the key thing. But was there an agreement? And Koch hired an attorney who hired an expert. Koch knew that. He acquiesced to that. He talked to him. He helped him prepare materials. And then he didn't want to pay the fees. If there was some kind of an oral agreement that's different from suing on a written contract that contains a jury waiver, that's very different. So let's look at the written contract that contains the jury waiver. The question to Mr. Nicholas was, and you expected them to sign it even though Paul Couchot's signature was already on it. Answer, yes. And then Mr. Nicholas was asked, question, did you think that Paul Couchot bound the defendants when he signed this document? This is Mr. Nicholas testifying. He's the plaintiff. He wrote the letter. He set up the signature blocks. Did you think that Paul Couchot bound the defendants when he signed this document? Answer, no. That's in the excerpts on pages 218 and 219. Mr. Nicholas himself did not think Mr. Couchot had the power to bind the documents. And when he set up the letter, he didn't think Mr. Couchot's signature would bind the defendants. Mr. Couchot's testimony was to the same effect. He testified as to why he did sign, and this is in the excerpts, page 223. Question, what was your purpose and intention in signing exhibit number one? My purpose was to create a privilege between Mr. Nicholas and myself. Question, a privilege relationship between the two of them? Answer, right. And then he testified, and this is the excerpts of page 226, that his clients hadn't even reviewed the retainer yet. Why does that make any difference in light of the fact that the issue sanctions said that Paul Couch was the authorized agent for the other defendants and he authorized Couchot to enter into that engagement agreement with GNA? If those issue sanctions are allowed to stand. What you're arguing to us is that we need to find that there was an abuse of discretion in avoiding the issue sanctions. There was an abuse of discretion if that's the standard. I believe it's a de novo standard. Judge Carney had already set aside those sanctions. He had resolved it. Paul Couch paid over $6,000 in monetary sanctions. He paid to come to California. He gave his deposition, and the deposition transcript was used by Mr. Burns at trial. And then the sanctions were reinstated as if nothing ever happened. So, yes, it is an abuse of discretion at that point with no hearing, no further evidence, no later developments, to reinstate those sanctions that Judge Carney had disposed of and that were done and behind the parties when the parties showed up for a jury call. The sanctions do not get us to a waiver of a jury or to the contract because the sanctions at that point were not proper and they deny the other defendants of their due process rights. Why couldn't Judge Wright reinstate the sanctions? Judge Wright? Yes, why couldn't he reinstate them? I mean, if he felt that he disagreed with Judge Carney. If he had given ‑‑ if he disagreed with Judge Carney, then the procedure would have been to give some notice to the defendants and hold a hearing and make some further findings. And none of that happened. Instead, we showed up the first day. By written stipulation, it was set as a jury trial. We showed up the first day for the jury trial. And when Judge Wright took the bench, he said he'd been looking at the file and he was striking the jury. He was reinstating the sanctions. Paul Koch would not be allowed to testify. All defendants were deemed to be bound by the contract they did not sign, solely because of what Paul Koch had done, which deprived them of their constitutional rights. And there was no opportunity for the defendants to brief the issue, to respond. It was all done on the fly in a matter of half an hour. And Judge Wright then said he would proceed as a bench file. And that was it. And that's how we proceeded. Thank you, counsel. Your time has expired.  Good morning, Your Honor. I am George Burns, the Respondent, George Nicholas and Associates. I just wanted to make a couple of brief comments and then I will submit unless the Court has any questions. May I have a question on the jury issue? You stipulated to a trial by jury on December 11th. So why doesn't that just trump any other discussion about whether there should have been a jury trial? Because the stipulation is in the form of the pretrial order. But at the same time, we had filed our motions in limine, including one to strike jury based on the ostensible authority of their attorney and based on the issue sanctions. I'm not quite sure I understand that. The stipulation says the parties hereby stipulate to begin a jury trial in this matter on March 6, 2007. And, I mean, why shouldn't the Court have just accepted the stipulation? I mean, that's an agreement of the parties. Parties can agree to, you know, have a trial before a bunch of trained monkeys if they want to, no matter what they've done before. So why shouldn't the stipulation just be effective? In the context of what was going on in the case at the time, that is a stipulation setting the date of the trial, we had at all times reserved our rights and objections to the jury trial waiver. We had filed with the magistrate judge for the sanctions. Well, it doesn't say so in the stipulation. It is within the district judge's discretion to review. To hold you to it. Because it's not that there's no qualification or no reservation in this step. The step says jury trial. Well, all right. So put that aside. What is the basis upon which a sanctions order against one person for defamation and defaulting on discovery obligations and ignoring a court order can be enforced against other people? Yes. The jointly represented defendants in this case are all found to have been involved in the discovery violations through the case. No, no, no, no, no, no. The district, the magistrate judge's discovery order runs against Paul. It doesn't run against his wife. It doesn't run against the company. And it doesn't run against Mrs. Minolis. I respectfully disagree. Okay. Well, just show me where it is. I sure don't see that. Maybe I missed it. I didn't realize the effect of it was to be on these other folks. But they didn't violate any discovery the second time. They had they were in a foul of some discovery orders in round one. But the round two discovery sanctions were in violation. And the reason I'm saying that is because the basis of the order had to do with conscious failure to show for his deposition, not for any default of the company or Mrs. Minolis or his wife. Right? That is the basis of the order, yes. Yes. So how can a sanctions, a sanctions order have any effect on third parties who didn't commit the offense that was sanctioned? Because what the magistrate judge said and the district court accepted was that you either have an empty remedy to the plaintiff who has an evidence sanction against only one party. When all those other jointly represented parties are going to stand up and say, well, I disagree with that. Oh, yeah, but you're making an assumption about jointly represented. I mean, surely their counsel was the same. But you're bootstrapping the issue preclusion into saying that because Paul did not That is an effect of the order. Well, how can you do that? Because the court is the court, the magistrate judge's statement was when you align yourself with Mr. Koch, that's just the situation you're going to be in. He's faced with a situation where either the plaintiff is going to have an empty remedy. Where did the magistrate judge say that? He specifically said it. The effect of his order was, fell on these three folks. But where in his order did he say that they're tied to Paul, and therefore whatever games Paul played, I'm going to deem that they played them, too? The quote in my brief from the magistrate judge from Exhibit 2. Yeah, but there's an awful lot of loose quoting going on. And so I'd like to know where the magistrate judge in his order found that these other three folks violated the discovery rules or their discovery obligations or a court order, and therefore the sanctions order applies to them, too. He did not make those findings. Okay. So in default of that, how can the sanctions order be applied to three people who didn't do anything wrong? I can only say what I've said before, that the court is faced with a situation where either the plaintiff is going to have an evidence sanction only against one party, when all of the other parties are going to say, well, I disagree with that, so what's the point of having an evidence remedy against only one party when all the others are going to still contest it? And the court had to weigh the equities of either there's going to be a burden on Mr. — from Mr. Koch's activities. It's either going to be borne by his co-defendants or it's going to be borne by the plaintiff. Counsel, what's the significance of Excerpt of Record 84, line 16? Do you have it? What is that? Koch is authorized to represent the interest of his co-defendants. Pardon? Well, it says, Defendant Paul Koch is authorized to represent the interest of his co-defendants Aquavest, Victoria, Koch, Petrie, and Nones, during the course of the underlying CTC bankruptcy litigation. Is that relevant to any of this, one way or another? Well, that is the finding by the court in the evidence section. The court also found, independent of all of this, and it's the only comment I want to make before I run out of time, that the striking of the jury in the motion in limine is based on, as Judge Rimer was indicating, the court found on the pretrial motion that because counsel for all of these parties had signed the agreement, he had ostensible authority to bind them, and that is the amended decision at page 2, lines 8 through 10, and the entire amended decision at line at page 7. So even independent of what I understand isn't a unique sanctions situation, I don't think either counsel have been able to find a case squarely on point. Independent of that somewhat novel sanctions issue, we believe the judgment clearly has to be affirmed against Mr. Koch, and we also think that the striking of the jury demand was independently found by the district court to have been based on the ostensible authority that all of their counsel signed the agreement. And we think that that is an independent basis to affirm the judgment as well. But I do acknowledge that the sanctions issue is a difficult issue, and there is nothing directly on point on it. If the judgment stands against him, what would be left to be retried? As a practical matter, it is a bonded judgment. That will probably terminate the case. If we're going to talk practicalities. So has there been any consideration by either side of this thing of pursuing mediation by our court's mediators? I just don't see what the point is of retrying this case. You're talking to the Respondent. Well, I know, but I'm saying it broadly. It's just hard to see the point of it. As a purely practical matter, have you – has any thought been given to mediating? The parties are far apart in their views of the case, is all I can say. Okay. Has there been any attempt to mediate up until now? No. There were discussions, but they have been rejected. You know, in all candor. If there's nothing else from the Court, I'll submit. Thank you, counsel. Thank you, Your Honors. The case just argued will be submitted for decision, and we will hear argument next in Rodriguez and West Publishing v. Schneider.
judges: O'scannlain, Rymer, Wardlaw